IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHERRY ANDRADE, | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-CV-318-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Sherry Andrade ("Andrade") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits under Title II and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA"). In July 2006, Andrade protectively applied for disability insurance and SSI benefits, alleging disability commencing on March 15, 2006. (Tr. 24, 110-18.)

1

After her applications for benefits were denied initially and on reconsideration, Andrade requested a hearing before an administrative law judge (the "ALJ"). (Tr. 24, 35-50; *see* Tr. 55-66, 72-81.) The ALJ held a hearing on September 2, 2008 and issued a decision on September 26, 2008, in which he found that Andrade was not disabled and was not entitled to disability insurance or SSI benefits because she retained the ability to perform several jobs that occurred in significant numbers in the national economy. (Tr. 21-34). The Appeals Council denied Andrade's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 3-7; *see* Tr. 15-16.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work

2

activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.*

3

This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

Andrade presents the following issues:

1. Whether the ALJ erred in failing to consider Andrade's chronic pain in combination with Andrade's other impairments;

2. Whether the ALJ applied the appropriate legal standard and properly evaluated Andrade's mental impairments at Step Two; and

3. Whether the new evidence submitted to the Appeals Council after the ALJ's decision diluted the record so that the ALJ's decision is no longer supported by substantial evidence.

### IV. ADMINISTRATIVE RECORD AND ALJ DECISION

In his September 26, 2008 decision, the ALJ found that Andrade met the disability insured status requirements of the SSA through December 31, 2006 and that she had not engaged in substantial gainful activity since March 15, 2006, the date of her alleged onset of disability. (Tr. 24, 32-33.) The ALJ further found that Andrade had the severe impairments of (1) degenerative disc disease in the lumbar spine; (2) degenerative changes in her knees; (3) controlled hypertension, with a history of now asymptomatic congestive heart failure; (4) non-insulin dependent diabetes mellitus; and (5) obesity. (Tr. 33; *see* Tr. 25.) Next, the ALJ held that none of Andrade's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 33.) As to Andrade's RFC, the ALJ stated, "Claimant has at all relevant times retained the exertional capacity for the sustained performance of a wide-range of sedentary work activities. She works with a sit-stand option, but there are no other physical limitations or restrictions and she has no

4

work-related mental limitations." (Tr. 33; *see* Tr. 29-31.)   The ALJ opined, based on his RFC assessment, that Andrade was not able to perform her past relevant work as a "night club/bar and grill manager or cook" but that there were several jobs that existed in significant numbers in the national economy that Andrade could perform.  (Tr. 33; *see* Tr. 31-34.)  Thus, the ALJ found that Andrade was not disabled.  (Tr. 32, 34.)

## V. DISCUSSION

### A. <u>Chronic Pain Syndrome</u>

Andrade argues that the "ALJ erred in assessing the severity of Andrade's chronic pain syndrome when evaluating the combination of impairments." (Pl.'s Br. at 11 (emphasis omitted); *see* Pl.'s Br. at 11-15.) Andrade claims that the record "contains several reports from physicians in which [her] chronic pain syndrome [was] discussed" and that her chronic pain affects her ability to work. (Pl.'s Br. at 12-13.)  Andrade argues that the ALJ "impliedly found that [her] chronic pain syndrome was not a severe impairment," was not considered a medically determinable severe impairment, and was not considered in combination with her other impairments throughout the disability process as required by 20 C.F.R. § 404.1523. (Pl.'s Br. at 11.)  Andrade contends that the record contains the following reports from physicians in which her chronic pain syndrome was discussed: (1) a December 14, 2007 History and Physical Report in which Sanjoy Sundaresan, M.D. ("Sundaresan") "noted that Andrade[] suffers from chronic pain disorder, which causes physical and psychosocial limitations" (Pl.'s Br. at 12; *see* Tr. 330); (2) a Physical Residual Functional Capacity Questionnaire dated August 9, 2007 in which Robert Allensworth, M.D. "Allensworth," assessed Andrade with "chronic pain," rated Andrade's pain level at an eight out of ten and her fatigue level at a nine out of ten, and opined that Andrade had emotional problems that contributed to the

severity of her symptoms and functional limitations. (Pl.'s Br. at 12; *see* Tr. 308-312.)  In addition,

Andrade claims that the record contains evidence of the effect of her chronic pain on her ability to

work.  (Pl.'s Br. at 12; *see* Tr. 146, 160-63, 308-11, 330-33, 348.)  Andrade, citing to *Mahoney v.*

*Astrue*, No. 3:09-CV-810-L, 2009 WL 3097334, at *5-9 (N.D. Tex. Sept. 25, 2009), argues that the

ALJ's failure to follow 20 C.F.R. § 404.1523[1] resulted in an improper RFC assessment and, thus, an

improper disability determination.  (P.'s Br. at 13.)

    The Commissioner, on the other hand, argues that the ALJ properly considered all of

Andrade's impairments, both singly and in combination, and did not err in his assessment of her

alleged chronic pain syndrome. (Def.'s Br. at 6-11.)    The Commissioner claims that, contrary to

Andrade's assertions, Andrade has never been diagnosed with "chronic pain syndrome" nor did she

allege it in her application for disability.  (Def.'s Br. at 6.)  The Commissioner argues that the

"ALJ's duty to investigate does not extend to possible disabilities that are not alleged by Andrade

and not clearly indicated on the record."  (Def.'s Br. at 6-7.)  The Commissioner claims that the

ALJ "painstakingly reviewed all of the medical evidence of record, devoting four pages of his

decision to his review" and found that "neither the objective medical evidence nor reasonable

inference, nor any other non-medical evidence established that Andrade's ability to function was so

---

[1] Section 404.1523 states:

       In determining whether your physical or mental impairment or impairments are of a
sufficient medical severity that such impairment or impairments could be the basis of eligibility under
the law, we will consider the combined effect of all of your impairments without regard to whether
any such impairment, if considered separately, would be of sufficient severity.  If we do find a
medically severe combination of impairments, the combined impact of the impairments will be
considered throughout the disability determination process.  If we do not find that you have a
medically severe combination of impairments, we will determine that you are not disabled (see §
404.1520).

20 C.F.R. § 404.1523; *see* 20 C.F.R. § 416.923.

severely impaired as to preclude the performance of all work activities." (Def.'s Br. at 8.) The Commissioner also argues that the ALJ accounted for Andrade's pain in his RFC determination by limiting her to sedentary work activity. (Def.'s Br. at 10.)

"For Social Security disability purposes, an 'impairment' is an abnormality that *can* be shown by medically acceptable clinical and laboratory diagnostic techniques, and in fact *must* be established by medical evidence, as opposed to the claimant's subjective statement or symptoms." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 867 (E.D. Tex. 2005) (emphasis in original). In making a disability determination, an ALJ is required to determine whether a claimant has "impairments" which, singly or in combination, are severe. 42 U.S.C. § 1382c. "[A]n individual's combined impairments can prohibit substantial gainful activity." *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). When determining whether a claimant's physical or mental impairments are of a sufficient medical severity that such impairments could be the basis of eligibility for disability benefits, the ALJ is required to consider the combined effect of all of the claimant's impairments without regard to whether any of such impairments, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). An ALJ may discuss each impairment individually and then state that he considered the combined effect of the impairments to satisfy this mandate, so long as the ALJ's RFC assessment considers all of the claimant's impairments and the assessment is supported by substantial evidence. *See, e.g.*, *Owens*, 770 F.2d at 1282.[2]

---

[2] In *Owens*, the claimant suffered from a back injury, heart condition, high blood pressure, severe pain in his lower back, shortness of breath, and fatigue. *Owens*, 770 F.3d at 1278-79. The ALJ found that Owens had the RFC to perform light work and was not disabled as he could perform his past relevant work. *Id.* at 1279. The claimant argued, *inter alia*, that the ALJ failed to consider the combined effects of his impairments because the ALJ evaluated each impairment individually. *Id.* at 1282. The Fifth Circuit disagreed, noting that the ALJ, in his decision, stated,

In this case, the record reflects that the ALJ did consider the combined effects of Andrade's physical and mental impairments. The ALJ found that Andrade had the severe impairments of (1) degenerative disc disease in the lumbar spine; (2) degenerative changes in her knees; (3) controlled hypertension, with a history of now asymptomatic congestive heart failure; (4) non-insulin dependent diabetes mellitus; and (5) obesity. (Tr. 33.) In making this determination, the ALJ acknowledged, *inter alia*, that Andrade had low back pain (Tr. 25), pain in her right knee (Tr. 26-27), was easily fatigued (Tr. 26), had difficulty sleeping due to her pain (Tr. 26); experienced some degree of pain or discomfort (Tr. 26-28), and suffered from depression (Tr. 29-31.) In addition, the ALJ, when reviewing Andrade's medical records, acknowledged that in a December 14, 2007 examination, Sundaresan noted that Andrade had chronic anxiety that was consistent with her "chronic pain disorder" but that Andrade "had no other 'significant psychiatric comorbidities.'" (Tr. 31; *see* Tr. 330.) In addition, the ALJ referenced the Questionnaire completed by Allensworth on August 9, 2007 in which Allensworth diagnosed Andrade, *inter alia*, with chronic back and knee pain. (Tr. 28, 308.) Next, the ALJ noted that none of Andrade's impairments or "combination of impairments" met or medically equaled any impairment in the listing. (Tr. 33.)

Based on an analysis of Andrade's impairments and the evidence in the record, the ALJ then assessed Andrade's RFC. (Tr. 27-31.) Citing to 20 C.F.R. §§ 404.1523, 404.1545, 416.923, 416.945, and Social Security Rulings 96-8p and 02-1p, the ALJ found that Andrade had the RFC to perform sedentary work. (Tr. 29; *see* Tr. 33.) In addition, the ALJ noted that Andrade would need to have a sit-stand option, but "that there is no indication that the several impairments combine to

---

"[C]laimant's impairments, taken singly or *in combination*, do not meet or equal an impairment as defined in the Listing of Impairments." *Owens*, 770 F.2d at 1282 (emphasis in original). The Fifth Circuit held that the ALJ's statement was not a "rote statement" because there was substantial evidence to support the ALJ's disability determination.

impose additional limitations upon this already limited capacity for only sedentary base-level work activities." (Tr. 29; *see* Tr. 33.)

As noted above, the ALJ is not required to undertake a detailed analysis of the combined effect of the impairments so long as his analysis considers all of Andrade's impairments and is supported by substantial evidence. *See Owens*, 770 F.2d at 1282. In this case, it is clear that the ALJ was aware of all of Andrade's physical (and mental impairments) and acknowledged that he had a duty to consider such impairments in combination. Furthermore, the ALJ went through a very extensive review of the medical and other evidence in the record, including the limited evidence relating to Andrade's alleged chronic pain syndrome, in making his disability determination. In addition, he properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record.[3] Consequently, the Court concludes that the ALJ properly addressed the combined effects of Andrade's impairments and remand is not required.

B. **Step Two Issues**

Andrade claims, in essence, that the ALJ erred when he: (1) failed to apply the appropriate standard for severity at Step Two for Andrade's mental impairments as set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) and (2) failed to find that Andrade's mental impairments were severe impairments even though the medical evidence indicated such were severe. (Pl.'s Br. at 1, 14-21.)

---

[3] In *Mahoney*, the case Andrade cited in support of her argument, the court did find that the ALJ erred in failing to consider claimant's severe chronic pain in making his disability determination based on two physician reports in the record concerning the possible existence of the claimant's chronic pain syndrome. 2009 WL 3097334, at *8-9. In making such a determination, the court stated that the "ALJ's opinion reflects no consideration of the alleged severe impairment of chronic pain syndrome." (*Id.* at *8.) The court further stated, "Because [the ALJ] failed to include [chronic pain syndrome] as an impairment, [the ALJ] failed to consider the effect of Plaintiff's chronic pain syndrome in combination with his other impairments." (*Id.*) The present case before the Court is distinguishable, however, because in this case the ALJ did consider Andrade's alleged severe impairment of chronic pain syndrome as shown by the ALJ's mention of the disorder when reviewing the medical evidence in the record. (Tr. 31.)

The Commissioner has issued regulations that define a severe impairment as one which significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).  *See also* 20 C.F.R. §§ 404.1521(a), 416.921(a).  The Fifth Circuit, however, has found that a literal application of that definition is inconsistent with the statutory language and legislative history of the Social Security Act.  *Stone*, 752 F.2d at 1104-05.  Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe:  An impairment is not severe only if it is a slight abnormality having *such minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.  *Stone*, 752 F.2d at 1101 (emphasis added).  The *Stone* severity standard does not allow for *any* interference with work ability, not even minimal interference.  *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a claimant's ability to work.")

As to the issue of whether the ALJ applied the appropriate severity standard, the courts are to presume that the ALJ used an incorrect standard for measuring severity at Step Two of the sequential evaluation process if the decision fails to refer to the *Stone* opinion by name or cite language of the same effect.  *See Loza*, 219 F.3d at 393.  A case, however, will not be remanded simply because the ALJ did not use "magic words," but remand is required where there is no indication the ALJ applied the correct standard.  *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986); *see also McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 835 (N.D. Tex. 2008) (indicating that the Fifth Circuit's remand mandate in *Stone* left lower courts with no discretion to conduct harmless error analysis to determine if remand was proper when the ALJ failed to apply the *Stone* severity standard).  The ALJ's failure to apply the *Stone* standard is a legal error, not a

10

procedural error, and the claim must be remanded to the Secretary for reconsideration unless the correct standard is used. *Stone*, 752 F.2d at 1106.

In this case, the ALJ, at Step Two determined that Andrade suffered from several severe physical impairments. (Tr. 25, 33.) In setting forth the legal standard that governed the ALJ's decision at Step Two, the ALJ, citing to *Stone v. Heckler*, stated in a footnote: "Severe medically determinable impairments are those that, either singly or in combination, have more than a minimal effect on claimant's ability to perform activities of daily life or basic work activities." (Tr. 25.) In reviewing Andrade's mental impairments, the ALJ further stated the following:

> I am aware of the de minimus severity standard of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985); 20 CFR [§§] 404.1521 and 416.921; SSRs 85-28 and 96-3p. However, claimant has a family support system and I do not find it credible that her family would not have arranged (or, at least, attempted to arrange) interim psychological evaluation and, if necessary, treatment if she had significant mental problems. Claimant is a single parent with pre-teen son; . . . and there is no post-onset history of [sic] there is no recent history of bizarre, aberrant or harmful behavior.

> I have found that the entire body of medical evidence does not support the DDS suggestion that the mental impairments are marginally severe and I find claimant's mental impairmentss [sic], neither singly nor in combination, do not have more than a minimal effect on her ability to perform either her activities of daily life or basic work activities. The mental impairmentss [sic] are not severe and claimant has not at any relevant time had work-related mental limitations. 20 CFR [§§] 404.1521(b) and 416.921(b).

(Tr. 31.) In the "Findings" section of his decision, the ALJ also stated:

> Claimant has been diagnosed with post-traumatic stress, major depressive and dependent personality disorders. However, the mental impairments have not led to restrictions in her activities of daily life and she has not experienced episodes of decompensation and she has only mild difficulty in her abilities to maintain (1) social functioning and (2) concentration, persistence or pace. Furthermore, there is no indication of an disorder [sic] has led to repeated, extended episodes of decompensation or resulted in such a marginal adjustment that even minimal increases in mental demands or environmental changes would cause decompensation

11

and she has functioned outside of a highly supportive living arrangement. Furthermore, there is no indication that, secondary to the anxiety disorder, she is completely unable to function independently outside the area of her home. Claimant does not have a mental impairment, that neither singly nor in combination, has more than a minimal effect on her ability to perform basic mental activities. *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).

(Tr. 33.)

In this case, the ALJ specifically referred to *Stone* by name on at least three occasions and even referred to the "de minimus severity standard of *Stone*." Thus, it appears that he did comply with the appropriate severity standard at Step Two by referring to *Stone* by name. *See, e.g., Loza*, 219 F.3d at 393; *Stovall v. Astrue*, No. 4:10-CV-180-A, 2011 WL 2413323, at *6 (N.D. Tex. Apr. 4, 2011). *Cf. Brown v. Astrue*, No. 4:08-CV-155-A, 2009 WL 1402287, at *4 (N.D. Tex. May 18, 2009) (finding that although the ALJ identified *Stone* by name, the case must be remanded because it appeared that the ALJ applied the regulatory definition, which created an ambiguity). However, even if it was not completely clear that the ALJ applied the appropriate standard because the language that he cited in several sections of his decision referenced similar language to that used in the regulations but failed to mention the modification the Fifth Circuit set forth in *Stone*, the Court still concludes that remand is not required. Such conclusion is reached when the Court looks beyond the "magic words" and reads the decision of the ALJ carefully to ensure that he used the appropriate severity standard in determining that none of Andrade's mental impairments were severe at Step Two. *See Hampton*, 785 F.2d at 1311; *see also Martinez v. Astrue*, No. 4:10-CV-883-Y, 2011 WL 3930219, at *6-7 (N.D. Tex. Aug. 18, 2011).

Pursuant to 20 C.F.R. §§ 404.1520a(a) and 416.920a(a), an ALJ must follow mandatory steps known as the "technique" when evaluating the severity of mental impairments in claimants.

12

20 C.F.R. §§ 404.1520a(a), 416.920a(a). In evaluating mental disorders under the technique, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt 4, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The regulations require the ALJ to evaluate the degree of functional loss resulting from the claimant's mental impairments. 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). If an impairment is found, the ALJ must evaluate the claimant's limitations in four functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).[5] The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. §§ 404.1520a(e), 416.920a(e).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must normally find the impairment is not severe at Step Two of the sequential evaluation process, which usually concludes the analysis and terminates the proceedings. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). The regulations contain a presumption that if the claimant's degree of limitation is rated as none or mild in the first three functional areas and as none in the

---

[5] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.*

fourth area, the ALJ will generally conclude that the claimant's mental impairment is not severe.  20

C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).   However, this presumption may be rebutted if "the

evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability

to do basic work activities."   *Id.*; *see also Stone*, 752 F.2d at 1101 (establishing the following

standard for determining whether a claimant's impairment is severe:  An impairment is not severe

only if it is a slight abnormality having such minimal effect on the individual that it would not be

expected to interfere with the individual's ability to work, irrespective of age, education or work

experience); *White v. Astrue*, No. 4:08-CV-415-Y, 2009 WL 763064, at *11 (N.D. Tex. March 23,

2009) (refusing to accept the claimant's argument that the "ALJ's finding is contrary to *Stone*,

because the ALJ, in applying the special technique [set forth in the regulations for evaluating mental

impairments], found mild deficits in her concentration, persistence or pace, as well as social

functioning").

    In this case, as discussed above, the ALJ found that Andrade's mental impairments were not

severe.  (Tr. 29-31, 33.)  In making such a finding, the ALJ reviewed all of the evidence in the

record and concluded that, although Andrade had been diagnosed with post-traumatic stress, major

depressive and dependent personality disorders, such impairments had not led to restrictions in her

activities of daily life and she had not experienced any episodes of decompensation.  (Tr. 33.)  In

accordance with the technique, the ALJ held that Andrade had only mild difficulties in her ability to

maintain social functioning and concentration, persistence or pace.  (Tr. 33.)

    Although section 20 C.F.R. § 40.1520a does not contain the severity standard set forth in

*Stone*, it does, as discussed above, set forth specific steps that the ALJ is to follow in assessing

mental impairments.  The ALJ followed the technique in this case in determining that Andrade's

mental impairments were not severe, specifically finding that Andrade suffered from no more than mild limitations in two of the four functional areas set forth in the regulations.   (Tr. 33.) Consequently, the Court concludes, based on the specific facts of this case, that the ALJ's analysis of Andrade's depression under the technique is sufficient to avoid reversal pursuant to *Stone* and its progeny.  *See Holman v. Astrue*, 2:06-CV-0238, 2009 WL 3047418, at *4 (N.D. Tex. Sept. 23, 2009) (finding that, although the ALJ failed to cite to *Stone* and only referenced Social Security Rulings that contained the *Stone* language, the ALJ's additional analysis of the plaintiff's mental impairment under the technique made "clear the ALJ found plaintiffs mental impairments were less than a slight abnormality having such minimal effect on the plaintiff that they would not be expected to interfere with her ability to work").   At least in this case, the ALJ's determination pursuant to the technique that Andrade had no severe mental impairments "is an implicit finding that her mental impairments have such minimal effect that they would not be expected to interfere with [Andrade's] ability to work, irrespective of age, education or work experience."[4]   *Parra v. Astrue*, No. 4:07-CV-443-Y, 2009 WL 49999, at *5 (N.D. Tex. Dec. 3, 2008) (noting that the claimant "did not challenge the ALJ's finding of a non-severe mental impairment at Step Two"); *see Martinez*, 2011 WL 3930219, at *7 ("[T]he Court concludes . . . that the ALJ's analysis of [the claimant's] depression under the technique, resulting in a finding that [the claimant] had only a mild impairment in the four functional areas, is sufficient to avoid reversal pursuant to *Stone* and its

---

[4] The Court is aware that the technique used in evaluating mental impairments and cited to by the ALJ contains language that is inconsistent with the severity standard set forth in *Stone. See* 20 C.F.R. § 404.1520a ("If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521)."). The Court is not suggesting that an ALJ's reference to the technique set forth in 20 C.F.R. § 404.1520a will, in every case, lead to the same result that remand is not required.

progeny."); *Holman*, 2009 WL 3047418, at *4. *Cf. Vinning v. Astrue*, No. 4:08-CV-059-A, 2009 WL 920192, at *4 (N.D. Tex. Apr. 2, 2009) ("A finding of *more* than mild impairment in [the claimant's] mental functioning would suggest that a severe mental impairment existed.") (emphasis added). Thus, as noted above, remand is not required on this issue because the record supports the conclusion that the ALJ applied the correct severity standard at Step Two.

The next issue is whether the ALJ's determination at Step Two that Andrade did not have a severe mental impairment is supported by substantial evidence in the record. Andrade claims that the "nonseverity finding . . . contradicts evidence in the administrative record" as "Andrade produced both treating-physician and consulting-physician evidence of mental impairments which caused more than a minimal effect on her ability to work." (Pl.'s Br. at 16.) Andrade argues that the "ALJ cited no contrary medical evidence [to the evidence from the treating and consulting physicians], and the reasons the ALJ gave for finding Andrade's mental impairments nonsevere do not constitute good cause for rejecting the doctors' opinions." (Pl.'s Br. at 18; *see* Pl.'s Br. at 16-21.)

In analyzing Andrade's mental impairments, the ALJ went through the medical evidence in the record, including the following: (1) Andrade's testimony that she was forgetful; had difficulty staying on task and making decisions; coped with stress and change by crying, getting nervous, and/or going to bed; and was prone to emotional outbursts that she could not explain (Tr. 29); (2) treatment records dated October 2002 through December 2003 from the Pecan Valley Mental Health/Mental Retardation clinic ("Pecan Valley") indicating Andrade had been diagnosed with major depressive disorder in partial remission and prescribed Prozac (Tr. 30; *see* Tr. 189-204); (3) medical records dated in 2006 from Allensworth noting that Andrade: (a) suffered from depression;

16

(b) was prescribed alprazolam, an anxiolytic, for four months; and (c) was prescribed Prozac (Tr. 30; *see* Tr. 264-70); (4) a consultative psychological examination dated August 24, 2007 in which Bobbie Hart Lilly, Ph.D. ("Lilly"), diagnosed Andrade with post-traumatic stress disorder, chronic; major depressive disorder, recurrent; and dependent personality disorder, and rated her Global Assessment of Functioning ("GAF")[5] score at forty[6] (Tr. 30; *see* Tr. 274-77); (5) a Psychiatric Review Technique Form ("PRTF") dated October 2, 2007 in which Norvin Curtis, Ph.D. ("Curtis"), indicated that Andrade's mental impairments were "nominally severe" (Tr. 30; *see* Tr. 288-301);[7] (6) a Physical Residual Functional Capacity Questionnaire dated August 9, 2007 in which Allensworth opined that unspecified psychological and emotional factors contributed to Andrade's overall disabling condition (Tr. 30; *see* Tr. 308-12); (7) medical records dated in February 2007 in which Andrade reported a history of depression and anxiety but David Ray, D.O. ("Ray") noted she "was alert and well oriented and did not mention any cognitive or mnemonic deficits" (Tr. 30-31; *see* Tr. 251-53); (8) an examination in September 2007 in which Randy Terrell, D.O. ("Terrell"), who was aware that Andrade had a history of depression and anxiety, observed that Andrade was "awake, alert and not in acute distress and . . . did not mention any cognitive or mnemonic deficits" (Tr. 31; *see* Tr. 280-82); and (9) an examination dated December 14, 2007 in which Sundaresan: (a) noted Andrade had chronic anxiety that was consistent with chronic pain disorder but stated

---

[5] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994) (DSM-IV).

[6] A GAF score of 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. DSM-IV at 34.

[7] In the PRTF, Curtis found that Andrade: (1) suffered from recurrent major depressive disorder and chronic post-traumatic stress disorder, neither which satisfied the diagnostic criteria for sections 12.04 or 12.06 of the Listing and (2) was mildly restricted in her activities of daily living and moderately restricted in maintaining social functioning, concentration, persistence, or pace. (Tr. 288-301.)

17

Andrade "had no other 'significant psychiatric comorbidities'" and (b) found that Andrade's attention span and concentration were within normal limits, her language and speech were intact, and she had an "adequate general fund of knowledge" (Tr. 31; *see* Tr. 330-33).

In making his determination that Andrade's mental impairments were not severe, the ALJ also relied, *inter alia*, on the following: (1) Andrade did not list mental impairments or problems when she initially filed her application for disability benefits (Tr. 29; *see* Tr. 110-18, 130-37, 146-48); (2) Andrade's acknowledgement at the hearing before the ALJ that the anti-depressant she had been taking for five or six months was helpful (Tr. 30); (3) the fact that Andrade did not return to Pecan Valley after her December 18, 2003 appointment and was discharged from the program (Tr. 30); (4) the fact that Allensworth ("the health professional mostly likely to be aware of abnormalities or deficiencies in [Andrade's] mental state") did not refer Andrade for a psychiatric evaluation and was not a "trained psychiatric" (Tr. 30); (5) a finding that Andrade's poor performance on the concentration, memory, and general fund of knowledge portions of a mental status exam given by Lilly were "a lack of effort" on Andrade's part (Tr. 30); (6) the fact that "claimant has no reported history of psychiatric in-patient care, supervised or assisted living services, or intense, frequent or recent out-patient counseling and she has not been the subject of court-ordered mental health proceedings" (Tr. 30); (7) a finding that Sundaresan's favorable observations relating to Andrade's attention span, concentration, and general fund of knowledge were in conflict with Lilly's observations but that such differences might be explained because "claimant was aware that exam [by Lilly] was conducted to evaluate possible psychological impairments that could lead to benefits while Dr. Sundaresan examined claimant for the purposes of diagnosis and treatment" (Tr. 31); (8) a finding that observations made by examining physicians

"during exams not directly related to alleged psychiatric impairments [were more] accurate and representative of claimant's mental status" than examinations by treating physician (Tr. 31); (9) the fact that Andrade's family, who provided Andrade with a support system, would have arranged or attempted to arrange a psychological evaluation and treatment if she had significant mental problems (Tr. 31); and (10) a lack of evidence supporting Curtis' suggestion that Andrade's mental impairments were marginally severe (Tr. 31).

In this case, the ALJ acknowledged and thoroughly analyzed Andrade's mental impairments and determined that such impairments were not severe. Although there are some indications that Andrade's mental impairments may be severe, there is also evidence relied on by the ALJ to support his decision that such impairments are not severe. The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). As to Andrade's low GAF scores, the Court notes that federal courts have declined to find such a strong correlation between an individual's GAF score and the ability or inability to work. *See* 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) (Commissioner declines to endorse the GAF scale for use in Social Security and SSI disability programs, and states that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"). *See, e.g., Kennedy v. Astrue,* 247 F. App'x 761, 766 (6th Cir. 2007); *Wind v. Barnhart,* 133 F. App'x 684, 692 n.5 (11th Cir. 2005). Because substantial evidence exists supporting the ALJ's decision regarding the severity of Andrade's mental impairments, the Court concludes that remand is not required.

19

### C. **New and Material Evidence**

The next issue is whether the new evidence submitted by Andrade to the Appeals Council after the ALJ's decision diluted the record such that the ALJ's decision is no longer supported by substantial evidence. Andrade argues that the Appeals Council acknowledged receipt of new and material evidence submitted by Andrade after the ALJ's decision but found that it did not provide a basis for changing the ALJ's decision. (Pl.'s Br. at 22.) Andrade claims that the Appeals Council erred because the "new evidence submitted to and accepted by the Council as new and material directly contradicts the ALJ's findings." (Pl.'s Br. at 23.)

After the ALJ's decision, Andrade submitted several documents to the Appeals Council.[8] One of the documents was a letter dated November 13, 2008 and signed by Jimmy Whetsell, PA-C ("Whetsell"), who is apparently a physician's assistant that works with Sundaresan.[9] In the letter, Whetsell stated:

> Ms. Sherry Andrade is a patient in our neurosurgery clinic. She continues to suffer from severe low back pain which also radiates into her lower extremities. She also has a history of chronic knee pain due to arthritis and apparently has been diagnosed with a cardiac condition recently. Unfortunately, her condition limits her ability to perform even simple activities of daily living. I therefore support her claim for disability/Social Security benefits. I do not feel that she is capable of gainful employment now or for the foreseeable future.

(Tr. 348.)[10]   Andrade claims that this letter, which restates her diagnosis of chronic pain and addresses Andrade's functional limitations, "contradicts the ALJ's findings that Andrade's

---

[8] The Court will not discuss the additional evidence that Andrade submitted that Andrade did not specifically discuss in her brief.

[9] Although Sundaresan did not sign the letter, his name is listed below Whetsell's signature. (Tr. 348.)

[10] The Court notes that the copy of the letter in the transcript is difficult to read because the last word of each line is missing or partially missing. (Tr. 348.)

allegations of [her ability to perform simple activities of daily living] are not credible and that she could perform and sustain substantial gainful activity." (Pl.'s Br. at 23.) Andrade also claims that Whetsell's letter supports the RFC assessment of Allensworth, who also opined that Andrade's functional limitations would preclude her from working. (Pl.'s Br. at 24; *see* Tr. 308-11.)

Andrade also submitted to the Appeals Council treatment notes, dated January 7, 2009, from an examination regarding Andrade's right knee pain performed by Theodore Crofford, M.D. ("Crofford"). (Tr. 349-50.) In the examination, Crofford opines that a "four-view x-ray taken of [Andrade's] right knee shows advance right knee arthritis with medical compartment bone-on-bone disease." (Tr. 349.) Crofford also diagnosed Andrade with the following: (1) right knee advanced and severe arthritis medical compartment bone-on-bone disease; (2) type two diabetes with some dysesthesia in the lower extremity consistent with neurological possible peripheral neuropathy; (3) hypertension; (4) tobacco use; (5) depression; and (6) anxiety. (Tr. 349.) Crofford recommended a right knee arthroplasty but Andrade was concerned that she could not afford it. (Tr. 349-50.) Andrade argues that this evidence supports "Andrade's allegations of disabling pain and functional limitations" and suggests that Andrade suffers from neuropathy, a condition of which the ALJ found no evidence. (Pl.'s Br. at 24-25.)

Andrade also submitted a "Delivery Ticket" dated February 16, 2009 that indicates she received a hinged knee brace and a rolling walker with wheels. (Tr. 351.) Andrade claims that this evidence contradicts the ALJ's findings that Andrade can ambulate without an assistive device, has no potentially disabling orthopedic impairment, and also supports her allegations of functional limitations. (Pl.'s Br. at 24-25.) In its February 18, 2011 letter to Andrade denying her request for review, the Appeals Council indicated that it had considered the additional evidence submitted by

Andrade and "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 4; *see* Tr. 3-7.)

Social Security regulations allow claimants to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision to deny benefits. 20 C.F.R. §§ 404.970(b), 404.976(b); *see Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 332 (N.D. Tex. 2003). The Appeals Council is required to evaluate the entire record, including any new and material evidence submitted by the claimant. *Id.* The Appeals Council's decision to decline to grant review of an ALJ's decision is part of the "final decision" and, as such, is reviewable in federal court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005). In the Fifth Circuit, "evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision." *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6 (W.D. La. Aug. 28, 2009) (citing *Higginbotham*, 405 F.3d at 332 and *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006) ("*Higginbotham II*")). "A court considering [the] final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported." *Lee v. Astrue*, No. 3:10-CV-155-BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010) (citing *Higginbotham II*, 163 F. App'x at 281-82). Moreover, the Appeals Council is bound to follow the same rules for considering medical opinion evidence as the rules that bind ALJs. 20 C.F.R. § 404.1527(f)(3). The SSA specifically provides that all medical opinions are to be considered in determining the disability status of a claimant. 20 C.F.R. § 404.1527(b).

22

"[T]his Court's task is to ascertain whether the Appeals Council's action was legally erroneous or factually unsubstantiated based on review of the entire administrative record." *Jones v. Astrue*, No. H-07-4435, 2008 WL 3004514, at *2 (S.D. Tex. Aug. 1, 2008). As to the November 13, 2008 letter from Whetsell, the Court notes that a physician's assistant is not an "acceptable medical source" whose opinion is entitled to controlling weight. *See, e.g., Shubargo v. Barnhart*, 161 F. App'x 748, 751, 2005 WL 3388615, at *3 (10th Cir. Dec. 13, 2005); *Latham v. Astrue*, No. 7:07-CV-086-BD, 2008 WL 4635396, at *3 (N.D. Tex. Oct. 15, 2008) ("Only licensed physicians or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are considered 'acceptable medical sources' who can provide evidence that a claimant suffers from a medically determinable impairment.") (citing 20 C.F.R. §§ 404.1513(a) & 416.913(a)); *Smith v. Shalala*, 856 F. Supp. 118, 122 (E.D.N.Y. 1994). Nevertheless, Whetsell's findings "may be used to show the severity of [Andrade's] impairment and how it affects [her] ability to work." *Latham*, 2008 WL 4635396, at *3 (citing 20 C.F.R. §§ 404.1513(d) & 416.913(d)) (allowing consideration of other medical-source evidence and defining "other sources" to include physician's assistants). While part of Whetsell's statement assesses Andrade's ability to work, his statements are similar to previous statements he made that were in the record prior to the ALJ's decision (*see, e.g.*, Tr. 328-29) and do not dilute the record to such an extent that the ALJ's decision becomes insufficiently supported.[11]

As to Whetsell's statement that Andrade is not capable of gainful employment, the Court again notes that Whetsell is not an "acceptable medical source" whose opinion is entitled to

---

[11] Although Andrade wants the Court to infer that Sundaresan presumably agreed with the contents in Whetsell's letter because his name appears on the letter, the Court cannot make such an inference as Sundaresan did not actually sign the letter. (*See* Pl.'s Reply Br. at 9.)

23

controlling weight.    Furthermore, the Court notes that conclusory findings that a patient is "disabled" or "unable to work" are not to be given any special significance because legal conclusions regarding disability are reserved to the ALJ. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

As to the treatment notes and x-ray results from Crofford, his statements are also similar to previous information that is already in the record that Andrade suffered from pain in her right knee, arthritis, diabetes, hypertension, tobacco use, depression, and anxiety. (*See, e.g.*, Tr. 25-34, 192, 196, 200, 202-04, 224, 251-53, 265, 267-68, 274-77, 280-82, 285, 308-12, 316.) With respect to the neuropathy, Crofford did not actually diagnose Andrade with neuropathy but, instead, noted that she had "some dysesthesia in the lower extremity consistent with neurologic possible peripheral neuropathy." (Tr. 349.)    Furthermore, even assuming Crofford had definitely diagnosed Andrade with neuropathy, Crofford's opinion does not provide any additional information on how such impairment is further impacting her ability to work.

As to the Delivery Ticket, the Court notes that it is merely a receipt for a knee brace and walker. There is no evidence, however, that any physician prescribed the brace and walker for her and why or for how long such items were prescribed. *Cf. Fisher v. Astrue*, No. H-07-4590, 2009 WL 2971308, at *21 n.7 (S.D. Tex. Sept. 16, 2009) (finding that the claimant's contention that the ALJ's RFC determination failed to take into consideration his need for a cane to ambulate when there was "no indication in the record that a cane was prescribed as a necessity for Fisher" and "[n]othing about the record suggests this was a permanent aid to ambulate). In addition, there was already evidence in the record that Andrade had a cane, which Andrade testified that she did not have to use all of the time. (Tr. 42-43; *see* Tr. 26.) Because none of the new evidence submitted by

24

Andrade to the Appeals Council dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported, the Court concludes that remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **February 27, 2012** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and

the opposing party chooses to file a response, the response shall be filed within seven (7) days of the

filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to

the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is

returned to the docket of the United States District Judge.

SIGNED February 13, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

26